# 11-2804-cr

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

-v.-

CHRISTIAN GATON,

Defendant - Appellant,

Jorge Abreu, Rudy Palma, Rafael Figueroa, AKA Rafael Beato, AKA Liro, AKA Camaron, Jose Hidalgo, AKA C.O. Shield 11440 Jose Rosario, AKA Jose Amaurys, Jimmy Ortiz, Pedro Ventura, Roberto Cristian Urena Almonte, AKA Villa Lona, AKA Christian Urena, AKA Roberto Almonte, Leocadio Hidalgo, AKA C.O. Leo, Leonardo Roque-Santana, AKA Luis M. Mendoza, Guillermo Delacruz, Quilvio Santana, AKA Mayimbe, Victor Diaz, AKA White Horse, Jeffrey Blake, Humberto Sanchez, AKA Chamo, Defendants.

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

## APPENDIX
## PART 2

Joyce C. London, Esq.
JOYCE C. LONDON, P.C.
*Attorney for Defendant-Appellant*
*Christian Gaton*
20 Vesey Street, Suite 400
New York, NY, 10007
212-964-3700

Michael A. Young
*Of Counsel*

SANTANA, a/k/a "Mayimbe," the defendants, together with Roberto Cristian Urena Almonte, a/k/a "Cristian Urena," a/k/a "Villa Lona," Rafael Figueroa, a/k/a "Rafael Beato," a/k/a "Liro," a/k/a "Camaron," Leonardo Rocque-Santana, a/k/a "Luis M. Mendoza," a/k/a "Luis M. Santiago," a/k/a "Kuki," Victor Diaz, a/k/a "White Horse," a/k/a "Querube," Jeffrey Blake, and others known and unknown, unlawfully, intentionally, and knowingly combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States, in violation of Title 21, United States Code, Section 846.

15. It was a part and an object of the conspiracy that JOSE HIDALGO, a/k/a "Jose Amaurys," a/k/a "Jose Rosario," a/k/a "Picho," JIMMY ORTIZ, PEDRO VENTURA, CRISTIAN D. GATON, HUMBERTO SANCHEZ, a/k/a "Chamo," LEOCADIO HIDALGO, a/k/a "Leo," GUILLERMO DELACRUZ, and QUILVIO SANTANA, a/k/a "Mayimbe," the defendants, together with Roberto Cristian Urena Almonte, a/k/a "Cristian Urena," a/k/a "Villa Lona," Rafael Figueroa, a/k/a "Rafael Beato," a/k/a "Liro," a/k/a "Camaron," Leonardo Rocque-Santana, a/k/a "Luis M. Mendoza," a/k/a "Luis M. Santiago," a/k/a "Kuki," Victor Diaz, a/k/a "White Horse," a/k/a "Querube," Jeffrey Blake, and others known and unknown, unlawfully, intentionally, and knowingly would and did distribute and possess with intent to distribute a controlled substance, to wit, one kilogram and more of mixtures and substances containing a detectable amount of

heroin, in violation of Sections 812, 841(a)(1), and 841(b)(1)(A) of Title 21, United States Code.

16.  It was a further part and an object of the conspiracy that JOSE HIDALGO, a/k/a "Jose Amaurys," a/k/a "Jose Rosario," a/k/a "Picho," JIMMY ORTIZ, PEDRO VENTURA, CRISTIAN D. GATON, HUMBERTO SANCHEZ, a/k/a "Chamo," LEOCADIO HIDALGO, a/k/a "Leo," GUILLERMO DELACRUZ, and QUILVIO SANTANA, a/k/a "Mayimbe," the defendants, together with Roberto Cristian Urena Almonte, a/k/a "Cristian Urena," a/k/a "Villa Lona," Rafael Figueroa, a/k/a "Rafael Beato," a/k/a "Liro," a/k/a "Camaron," Leonardo Rocque-Santana, a/k/a "Luis M. Mendoza," a/k/a "Luis M. Santiago," a/k/a "Kuki," and others known and unknown, unlawfully, intentionally, and knowingly would and did distribute and possess with intent to distribute a controlled substance, to wit, five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Sections 812, 841(a)(1), and 841(b)(1)(A) of Title 21, United States Code.

Racketeering Act Five:   Money Laundering Conspiracy

17.  From at least in or about 1987 up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, JOSE HIDALGO, a/k/a "Jose Amaurys," a/k/a "Jose Rosario," a/k/a "Picho," JIMMY ORTIZ, PEDRO VENTURA, CRISTIAN D. GATON, HUMBERTO SANCHEZ, a/k/a "Chamo," LEOCADIO HIDALGO, a/k/a "Leo," GUILLERMO DELACRUZ, and QUILVIO

SANTANA, a/k/a "Mayimbe," the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to violate Section 1956(a)(1)(B)(i) of Title 18, United States Code, in violation of Title 18, United States Code, Section 1956(h).

18. It was a part and an object of the conspiracy that JOSE HIDALGO, a/k/a "Jose Amaurys," a/k/a "Jose Rosario," a/k/a "Picho," JIMMY ORTIZ, PEDRO VENTURA, CRISTIAN D. GATON, HUMBERTO SANCHEZ, a/k/a "Chamo," LEOCADIO HIDALGO, a/k/a "Leo," GUILLERMO DELACRUZ, and QUILVIO SANTANA, a/k/a "Mayimbe," the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in financial transactions, to wit, the transfer of tens of thousands of dollars in cash, represented the proceeds of some form of unlawful activity, unlawfully, willfully, and knowingly would and did conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, the proceeds of illegal narcotics trafficking, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1961 & 1962(c).)

COUNT TWO

THE RACKETEERING CONSPIRACY

The Grand Jury further charges:

19.    Paragraphs 1 through 8 and 10 through 18 of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

20.    From at least in or about 1987 up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, JOSE HIDALGO, a/k/a "Jose Amaurys," a/k/a "Jose Rosario," a/k/a "Picho," JIMMY ORTIZ, PEDRO VENTURA, CRISTIAN D. GATON, HUMBERTO SANCHEZ, a/k/a "Chamo," LEOCADIO HIDALGO, a/k/a "Leo," GUILLERMO DELACRUZ, and QUILVIO SANTANA, a/k/a "Mayimbe," the defendants, and others known and unknown, being persons employed by and associated with the enterprise described in Paragraphs 1 through 8 of Count One of this Indictment, to wit, the Hidalgo Organization, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States, to wit, Section 1962(c) of Title 18, United States Code, that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise, which was engaged in, and the activities of which affected, interstate and foreign commerce, through a pattern of racketeering activity, to wit, the racketeering acts set forth in Paragraphs 10 through 18 of Count One of this Indictment as

Racketeering Acts One through Five. It was a part of the
conspiracy that each defendant agreed that a conspirator would
commit at least two acts of racketeering in the conduct of the
affairs of the enterprise.

(Title 18, United States Code, Section 1962(d).)

## COUNT THREE

### MURDER IN AID OF RACKETEERING ACTIVITY

The Grand Jury further charges:

21. The Hidalgo Organization, as described in
paragraphs 1 through 8 of Count One of this Indictment, which are
realleged and incorporated by reference as though fully set forth
herein, constituted an enterprise, as that term is defined in
Title 18, United States Code, Section 1959(b)(2), that is, an
association in fact of individuals engaged in, and the activities
of which affected, interstate and foreign commerce.

22. The Hidalgo Organization, through its members and
associates, engaged in racketeering activity, as that term is
defined in Title 18, United States Code, Sections 1961(a) and
1959(b)(1), that is, acts involving murder, in violation of New
York Penal Law, narcotics trafficking, in violation of Title 21,
United States Code, Sections 841 and 846, and money laundering,
in violation of Title 18, United States Code, Section 1956.

23. On or about November 6, 1994, in the Southern
District of New York, as consideration for the receipt of, and as

18

036

consideration for a promise and agreement to pay, a thing of
pecuniary value from the Hidalgo Organization, and for the
purpose of gaining entrance to and maintaining and increasing
their positions in the Hidalgo Organization, an enterprise
engaged in racketeering activity, as described above, PEDRO
VENTURA, ROBERTO CRISTIAN URENA ALMONTE, a/k/a "Cristian Urena,"
a/k/a "Villa Lona," and CRISTIAN D. GATON, the defendants,
unlawfully, intentionally, and knowingly murdered and aided and
abetted the murder of Celeste Suazo, in the vicinity of 1480
Popham Avenue, Bronx, New York, in violation of New York Penal
Law, Sections 20.00 and 125.25.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

### COUNT FOUR

#### MURDER IN AID OF RACKETEERING ACTIVITY

The Grand Jury further charges:

24.  Paragraphs 21 and 22 of Count Three of this
Indictment are realleged and incorporated by reference as though
fully set forth herein.

25.  On or about December 20, 1994, in the Southern
District of New York, as consideration for the receipt of, and as
consideration for a promise and agreement to pay, a thing of
pecuniary value from the Hidalgo Organization, and for the
purpose of gaining entrance to and maintaining and increasing
their positions in the Hidalgo Organization, an enterprise

engaged in racketeering activity, as described above, PEDRO

VENTURA, ROBERTO CRISTIAN URENA ALMONTE, a/k/a "Cristian Urena,"

a/k/a "Villa Lona," and CRISTIAN D. GATON, the defendants,

unlawfully, intentionally, and knowingly murdered and aided and

abetted the murder of Damien Bautista, in the vicinity of the

Bronx River Parkway, Bronx, New York, in violation of New York

Penal Law, Sections 20.00 and 125.25.

(Title 18, United States Code, Sections 1959(a)(1) and 2.)

### COUNT FIVE

### NARCOTICS CONSPIRACY

The Grand Jury further charges:

26. From at least in or about 1987 up to and including

the date of the filing of this Indictment, in the Southern

District of New York and elsewhere, JOSE HIDALGO, a/k/a "Jose

Amaurys," a/k/a "Jose Rosario," a/k/a "Picho," JIMMY ORTIZ, PEDRO

VENTURA, ROBERTO CRISTIAN URENA ALMONTE, a/k/a "Cristian Urena,"

a/k/a "Villa Lona," CRISTIAN D. GATON, RAFAEL FIGUEROA, a/k/a

"Rafael Beato," a/k/a "Liro," a/k/a "Camaron," HUMBERTO SANCHEZ,

a/k/a "Chamo," LEOCADIO HIDALGO, a/k/a "Leo," LEONARDO ROCQUE-

SANTANA, a/k/a "Luis M. Mendoza," a/k/a "Luis M. Santiago," a/k/a

"Kuki," GUILLERMO DELACRUZ, QUILVIO SANTANA, a/k/a "Mayimbe,"

VICTOR DIAZ, a/k/a "White Horse," a/k/a "Querube," and JEFFREY

BLAKE, the defendants, and others known and unknown, unlawfully,

intentionally, and knowingly combined, conspired, confederated,

and agreed together and with each other to violate the narcotics laws of the United States.

27. It was a part and an object of the conspiracy that JOSE HIDALGO, a/k/a "Jose Amaurys," a/k/a "Jose Rosario," a/k/a "Picho," JIMMY ORTIZ, PEDRO VENTURA, ROBERTO CRISTIAN URENA ALMONTE, a/k/a "Cristian Urena," a/k/a "Villa Lona," CRISTIAN D. GATON, RAFAEL FIGUEROA, a/k/a "Rafael Beato," a/k/a "Liro," a/k/a "Camaron," HUMBERTO SANCHEZ, a/k/a "Chamo," LEOCADIO HIDALGO, a/k/a "Leo," LEONARDO ROCQUE-SANTANA, a/k/a "Luis M. Mendoza," a/k/a "Luis M. Santiago," a/k/a "Kuki," GUILLERMO DELACRUZ, QUILVIO SANTANA, a/k/a "Mayimbe," VICTOR DIAZ, a/k/a "White Horse," a/k/a "Querube," and JEFFREY BLAKE, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, to wit, one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Sections 812, 841(a)(1), and 841(b)(1)(A) of Title 21, United States Code.

28. It was further a part and an object of the conspiracy that JOSE HIDALGO, a/k/a "Jose Amaurys," a/k/a "Jose Rosario," a/k/a "Picho," JIMMY ORTIZ, PEDRO VENTURA, ROBERTO CRISTIAN URENA ALMONTE, a/k/a "Cristian Urena," a/k/a "Villa Lona," CRISTIAN D. GATON, RAFAEL FIGUEROA, a/k/a "Rafael Beato," a/k/a "Liro," a/k/a "Camaron," HUMBERTO SANCHEZ, a/k/a "Chamo," LEOCADIO HIDALGO, a/k/a "Leo," LEONARDO ROCQUE-SANTANA, a/k/a "Luis M. Mendoza," a/k/a "Luis M. Santiago," a/k/a "Kuki,"

GUILLERMO DELACRUZ, QUILVIO SANTANA, a/k/a "Mayimbe," VICTOR
DIAZ, a/k/a "White Horse," a/k/a "Querube," and JEFFREY BLAKE,
the defendants, and others known and unknown, would and did
distribute and possess with intent to distribute a controlled
substance, to wit, five kilograms and more of mixtures and
substances containing a detectable amount of cocaine, in
violation of Sections 812, 841(a)(1), and 841(b)(1)(A) of Title
21, United States Code.

Overt Acts

29.   In furtherance of the conspiracy and to effect the
illegal objects thereof, JOSE HIDALGO, a/k/a "Jose Amaurys,"
a/k/a "Jose Rosario," a/k/a "Picho," JIMMY ORTIZ, PEDRO VENTURA,
ROBERTO CRISTIAN URENA ALMONTE, a/k/a "Cristian Urena," a/k/a
"Villa Lona," CRISTIAN D. GATON, RAFAEL FIGUEROA, a/k/a "Rafael
Beato," a/k/a "Liro," a/k/a "Camaron," HUMBERTO SANCHEZ, a/k/a
"Chamo," LEOCADIO HIDALGO, a/k/a "Leo," LEONARDO ROCQUE-SANTANA,
a/k/a "Luis M. Mendoza," a/k/a "Luis M. Santiago," a/k/a "Kuki,"
GUILLERMO DELACRUZ, QUILVIO SANTANA, a/k/a "Mayimbe," VICTOR
DIAZ, a/k/a "White Horse," a/k/a "Querube," and JEFFREY BLAKE,
the defendants, and others known and unknown, committed the
following overt acts, among others, in the Southern District of
New York and elsewhere:

a.   In or about 1987, JOSE HIDALGO and RAFAEL
FIGUEROA supplied glassine bags of heroin bearing a "stamp"

040

reading "Mr. .45" to a heroin distribution spot in the vicinity of 182nd Street and Morris Avenue, Bronx, New York.

       b.   In or about 1989, JOSE HIDALGO, JIMMY ORTIZ, ROBERTO CRISTIAN URENA ALMONTE, RAFAEL FIGUEROA, and LEOCADIO HIDALGO, supplied glassine bags of heroin to heroin distribution spots operated by the Hidalgo Organization in the vicinity of 182nd Street and Morris Avenue, 170th Street and Jessup Avenue, and 138th Street and Brook Avenue, Bronx New York.

       c.   In or about 1989, JOSE HIDALGO and a co-conspirator not named as a defendant herein ("CC-1"), pointed an automatic assault weapon at, and threatened to kill, a man who was suspected of stealing money from the Hidalgo Organization's heroin distribution spot in the vicinity of 182nd Street and Morris Avenue, Bronx, New York.

       d.   On or about March 31, 1990, JOSE HIDALGO, JIMMY ORTIZ, ROBERTO CRISTIAN URENA ALMONTE, and RAFAEL FIGUEROA confronted Hector Reyes, a/k/a "Pochy," in the vicinity of West 160th Street and Broadway, New York, New York, and assisted CC-1 in shooting and attempting to murder Reyes.

       e.   On or about August 27, 1990, ROBERTO CRISTIAN URENA ALMONTE, aided and abetted by RAFAEL FIGUEROA, CC-1, and another co-conspirator not named as a defendant herein, shot and killed Felix Gil, in the vicinity of 190th Street and Audubon Avenue, New York, New York.

23

041

f.    In or about January 1993, PEDRO VENTURA and CC-1 borrowed approximately $15,000 from JOSE HIDALGO to purchase a grocery store located at 2718 White Plains Road, Bronx, New York, for use as a retail cocaine distribution spot.

g.    In or about 1993, HUMBERTO SANCHEZ and LEONARDO ROCQUE-SANTANA began supplying heroin and cocaine to drug distribution spots operated by the Hidalgo Organization in the New York City area.

h.    In or about November 1994, PEDRO VENTURA, ROBERTO CRISTIAN URENA ALMONTE, and CC-1 met in the Bronx, New York, for the purpose of planning the murder of Celeste Suazo, a rival narcotics trafficker.

i.    In or about November 1994, CC-1 obtained a nine-millimeter semi-automatic assault weapon owned by JOSE HIDALGO and JIMMY ORTIZ for use in the murder of Celeste Suazo.

j.    On or about November 6, 1994, ROBERTO CRISTIAN URENA ALMONTE and CRISTIAN D. GATON murdered Celeste Suazo with a nine millimeter automatic assault weapon in the vicinity of 1480 Popham Avenue, Bronx, New York.

k.    In or about December 1994, PEDRO VENTURA, ROBERTO CRISTIAN URENA ALMONTE, CRISTIAN D. GATON, and CC-1 met in the vicinity of 2718 White Plains Road, Bronx, New York, for the purpose of planning the murder of Damien Bautista, a rival narcotics trafficker.

24

l.     On or about December 20, 1994, ROBERTO CRISTIAN URENA ALMONTE and CRISTIAN D. GATON shot and fatally wounded Damien Bautista in the vicinity of the Bronx River Parkway, Bronx, New York.

m.     In or about 1994, JOSE HIDALGO rented a house from JEFFREY BLAKE in the vicinity of 222nd Street and Laconia Avenue, Bronx, New York, for use as a location to prepare, package, and stash heroin.

n.     In or about June 1995, JEFFREY BLAKE arranged for and effected the rental of an apartment located at 1024 East 241st Street, Bronx, New York, to CC-1 and other members of the Hidalgo Organization, for use as a stash location.

o.     On or about November 15, 1997, RAFAEL FIGUEROA fought with other patrons at the Toma Y Dame social club, in the vicinity of 1388-90 Jessup Avenue, Bronx, New York, after which ROBERTO CRISTIAN URENA ALMONTE shot and killed one person at the club, Rennen Sanchez, and shot and attempted to kill two other people, Roger Peguero and Francisco Crespo, with a 9-millimeter semi-automatic pistol.

p.     In or about November 1997, JOSE HIDALGO, JIMMY ORTIZ, HUMBERTO SANCHEZ, CC-1, and other members and associates of the Hidalgo Organization received approximately three shipments of approximately 300 kilograms of cocaine each that had been arranged by another co-conspirator not named as a

defendant herein ("CC-2"), and distributed the cocaine to customers throughout the New York City area.

q.    In or about January and February 1998, respectively, JEFFREY BLAKE arranged for and effected the rental of apartments located at 1821 Nereid Avenue and 4077 Murdock Avenue, Bronx, New York, to CC-1 and other members and associates of the Hidalgo Organization, for use as stash locations.

r.    In or about January 1998, GUILLERMO DELACRUZ arranged for and effected the rental of an apartment located at 2511 Cruger Avenue, Bronx, New York, in his own name, for use by CC-1 and other members and associates of the Hidalgo Organization as a stash location.

s.    In or about February and March 1998, JOSE HIDALGO, JIMMY ORTIZ, HUMBERTO SANCHEZ, CC-1, and other members and associates of the Hidalgo Organization received approximately three shipments of approximately 300 kilograms of cocaine each that had been arranged by CC-2, and distributed the cocaine to customers throughout the New York City area.

t.    In or about February 1998, JEFFREY BLAKE arranged for and effected the rental of a warehouse located in the vicinity of East 241st Street and White Plains Road, Bronx, New York, to members of the Hidalgo Organization for use as a stash location to store a large shipment of cocaine.

u.    In or about spring 1998, GUILLERMO DELACRUZ and CC-1 delivered a bag containing numerous firearms to a stash

location at 1024 East 241st Street, Bronx, New York, and placed the firearms inside a hidden compartment in the stash location.

v. In or about spring 1998, GUILLERMO DELACRUZ stored a .40 caliber semi-automatic pistol in an apartment utilized by the Hidalgo Organization as a stash location at 2511 Cruger Avenue, Bronx, New York.

w. In or about April 1998, JOSE HIDALGO, CRISTIAN D. GATON, HUMBERTO SANCHEZ, CC-1, CC-2, and other members and associates of the Hidalgo Organization met at a warehouse in the vicinity of East 241st Street and White Plains Road, Bronx, New York, and unloaded a truck containing approximately 600 kilograms of cocaine.

x. In or about April 1998, JOSE HIDALGO, HUMBERTO SANCHEZ, CC-1, and other members and associates of the Hidalgo Organization possessed, among other things, a Tec-9 semi-automatic assault weapon and ammunition in a stash location at 143 Bruce Avenue, Yonkers, New York.

y. In or about April 1998, JOSE HIDALGO, HUMBERTO SANCHEZ, CC-1, and other members and associates of the Hidalgo Organization possessed, among other things, a .32 caliber revolver, a .40 caliber semi-automatic pistol, a .380 caliber semi-automatic pistol, and a .45 caliber semi-automatic pistol in a stash location at 1024 East 241st Street, Bronx, New York.

z. In or about April 1998, GUILLERMO DELACRUZ, CC-1, and other members and associates of the Hidalgo

Organization possessed, among other things, approximately 65 kilograms of cocaine, narcotics packaging paraphernalia, a .40 caliber semi-automatic pistol, a .45 caliber semi-automatic pistol, and ammunition in a stash location at 2511 Cruger Avenue, Bronx, New York.

aa. In or about 2000, JOSE HIDALGO and JIMMY ORTIZ paid a total of approximately $40,000 to a co-conspirator not named as a defendant herein ("CC-3") to store shipments of cocaine containing a total of approximately 900 kilograms of cocaine in a parking garage operated by CC-3 in the vicinity of 144th Street, New York, New York.

bb. On or about July 19, 2000, LEOCADIO HIDALGO delivered approximately 200 glassine bags of heroin to an undercover officer ("UC-1") in the parking lot of a McDonald's restaurant in the vicinity of Fordham Road and Southern Boulevard, Bronx, New York.

cc. On or about November 3, 2000, JIMMY ORTIZ delivered approximately 573 glassine bags of heroin to UC-1 in the vicinity of Fordham Road and Hampden Place, Bronx, New York.

dd. On or about January 3, 2001, JIMMY ORTIZ took receipt of $10,000 from another undercover officer ("UC-2") as payment for heroin delivered by ORTIZ to UC-2 on or about December 1, 2000, and delivered approximately 550 additional glassine bags of heroin to UC-2, in the vicinity of Fordham Road and Cedar Avenue, Bronx, New York.

ee. On or about March 16, 2001, QUILVIO SANTANA delivered approximately 500 glassine bags of heroin to UC-2 in the vicinity of Fordham Road and Cedar Avenue, Bronx, New York.

ff. On or about June 1, 2001, JOSE HIDALGO, JIMMY ORTIZ, VICTOR DIAZ, and QUILVIO SANTANA met in the basement apartment of 562 West 189th Street, New York, New York, in preparation for a narcotics transaction.

gg. On or about June 1, 2001, QUILVIO SANTANA exited the basement of 562 West 189th Street, New York, New York, and traveled to the vicinity of Fordham Road and Cedar Avenue, Bronx, New York, where he delivered approximately 501 glassine bags of heroin to UC-2.

hh. In or about November 2001, JOSE HIDALGO and JIMMY ORTIZ paid CC-3 approximately $20,000 worth of cocaine to store approximately 600 kilograms of cocaine owned by HIDALGO and ORTIZ in a parking garage operated by CC-3 in the vicinity of 144th Street, New York, New York.

ii. In or about November 2001, JOSE HIDALGO and QUILVIO SANTANA delivered approximately 600 kilograms of cocaine to the parking garage operated by CC-3 in the vicinity of 144th Street, New York, New York.

jj. On or about December 12, 2001, JIMMY ORTIZ engaged in a telephone conversation with VICTOR DIAZ in which ORTIZ advised DIAZ in substance that JOSE HIDALGO had been arrested and that DIAZ should leave his home.

kk.  On or about January 7, 2002, CC-3 possessed approximately 537 kilograms of cocaine contained in two vans located, respectively, outside of a garage operated by CC-3 in the vicinity of 144th Street, New York, New York, and inside of a garage operated by CC-3 in the vicinity of 148th Street, New York, New York.

ll.  On or about February 15, 2002, JIMMY ORTIZ, who was located in the Dominican Republic, engaged in a telephone conversation with UC-2 regarding a payment of money that was owed to ORTIZ for a prior heroin purchase.

mm.  On or about February 15, 2002, a co-conspirator not named as a defendant herein ("CC-4") met with UC-2 in the vicinity of Fordham Road and Cedar Avenue, Bronx, New York, and took receipt of $5,000 from UC-2 as payment owed to JIMMY ORTIZ for a prior heroin purchase.

(Title 21, United States Code, Section 846.)

## FIREARMS OFFENSES

## COUNT SIX

The Grand Jury further charges:

30.  On or about November 6, 1994, in the Southern District of New York, PEDRO VENTURA, ROBERTO CRISTIAN URENA ALMONTE, a/k/a "Cristian Urena," a/k/a "Villa Lona," and CRISTIAN D. GATON, the defendants, unlawfully, willfully, and knowingly, during and in relation to a crime of violence and a drug

trafficking crime for which they may be prosecuted in a court of the United States, namely, the offenses charged in Counts Three and Five of this Indictment, did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, to wit, a Tec-9 semi-automatic assault weapon, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 924(c)(1)(B)(i), and in the course of that violation did cause the death of a person through the use of a firearm, to wit, the defendants caused the murder of Celeste Suazo, by discharging, and aiding and abetting the discharge of, a firearm at Celeste Suazo, in the vicinity of 1480 Popham Avenue, Bronx, New York.

> (Title 18, United States Code, Sections 924(j)(1),
> 924(c)(1)(A)(iii), 924(c)(1)(B)(i), and 2.)

## COUNT SEVEN

The Grand Jury further charges:

31. On or about December 20, 1994, in the Southern District of New York, PEDRO VENTURA, ROBERTO CRISTIAN URENA ALMONTE, a/k/a "Cristian Urena," a/k/a "Villa Lona," and CRISTIAN D. GATON, the defendants, unlawfully, willfully, and knowingly, during and in relation to a crime of violence and a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the offenses charged in Counts Four and Five of this Indictment, did use and carry a firearm, and, in furtherance of such crime, did possess a firearm, to wit, a .357 caliber revolver, in violation of Title 18, United States Code,

31

**049**

31

Sections 924(c)(1)(A)(iii), and in the course of that violation did cause the death of a person through the use of a firearm, to wit, the defendants caused the murder of Damien Bautista, by discharging, and aiding and abetting the discharge of, a firearm at Damien Bautista, in the vicinity of the Bronx River Parkway, Bronx, New York.

> (Title 18, United States Code, Sections
> 924(j)(1), 924(c)(1)(A)(iii), and 2.)

## COUNT EIGHT

The Grand Jury further charges:

32. In or about spring 1998, in the Southern District of New York, JOSE HIDALGO, a/k/a "Jose Amaurys," a/k/a "Jose Rosario," a/k/a "Picho," PEDRO VENTURA, and HUMBERTO SANCHEZ, a/k/a "Chamo," the defendants, unlawfully, willfully, and knowingly, during and in relation to a crime of violence and a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the offenses charged in Counts One, Two, and Five of this Indictment, did use and carry a firearm, and, in furtherance of such crimes, did possess a firearm, to wit, a Tec-9 semi-automatic assault weapon, which the defendants carried and possessed in the vicinity of 143 Bruce Avenue, Yonkers, New York.

> (Title 18, United States Code,
> Sections 924(c)(1)(B)(i) and 2.)

## COUNT NINE

The Grand Jury further charges:

33.  In or about spring 1998, in the Southern District of New York, JOSE HIDALGO, a/k/a "Jose Amaurys," a/k/a "Jose Rosario," a/k/a "Picho," HUMBERTO SANCHEZ, a/k/a "Chamo," and LEOCADIO HIDALGO, a/k/a "Leo," the defendants, unlawfully, willfully, and knowingly, during and in relation to a crime of violence and a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the offenses charged in Counts One, Two, and Five of this Indictment, did use and carry firearms, and, in furtherance of such crimes, did possess firearms, to wit, a .32 caliber revolver, a .40 caliber semi-automatic pistol, a .380 caliber semi-automatic pistol, and a .45 caliber semi-automatic pistol, which the defendants carried and possessed in the vicinity of 1024 East 241st Street, Bronx, New York.

(Title 18, United States Code, Sections
924(c)(1)(A)(i), 924(c)(1)(C)(i), and 2.)

## COUNT TEN

The Grand Jury further charges:

34.  In or about spring 1998, in the Southern District of New York, GUILLERMO DELACRUZ, the defendant, unlawfully, willfully, and knowingly, during and in relation to a crime of violence and a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the offenses

charged in Counts One, Two, and Five of this Indictment, did use
and carry firearms, and, in furtherance of such crimes, did
possess firearms, to wit, a .40 caliber semi-automatic pistol and
a .45 caliber semi-automatic pistol, which the defendant carried
and possessed in the vicinity of 2511 Cruger Avenue, Bronx, New
York.

(Title 18, United States Code,
Sections 924(c)(1)(A)(i) and 2.)

## COUNT ELEVEN

### MONEY LAUNDERING CONSPIRACY

The Grand Jury further charges:

35. From at least in or about 1987 up to and including
the date of the filing of this Indictment, in the Southern
District of New York and elsewhere, JOSE HIDALGO, a/k/a "Jose
Amaurys," a/k/a "Jose Rosario," a/k/a "Picho," JIMMY ORTIZ, PEDRO
VENTURA, CRISTIAN D. GATON, HUMBERTO SANCHEZ, a/k/a "Chamo,"
LEOCADIO HIDALGO, a/k/a "Leo," GUILLERMO DELACRUZ, and QUILVIO
SANTANA, a/k/a "Mayimbe," the defendants, and others known and
unknown, unlawfully, willfully, and knowingly did combine,
conspire, confederate, and agree together and with each other to
violate Section 1956(a)(1)(B)(i) of Title 18, United States Code.

36. It was a part and an object of the conspiracy that
JOSE HIDALGO, a/k/a "Jose Amaurys," a/k/a "Jose Rosario," a/k/a
"Picho," JIMMY ORTIZ, PEDRO VENTURA, CRISTIAN D. GATON, HUMBERTO
SANCHEZ, a/k/a "Chamo," LEOCADIO HIDALGO, a/k/a "Leo," GUILLERMO

34

052

34

DELACRUZ, and QUILVIO SANTANA, a/k/a "Mayimbe," the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in financial transactions, to wit, the transfer of tens of thousands of dollars in cash, represented the proceeds of some form of unlawful activity, unlawfully, willfully, and knowingly would and did conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, the proceeds of illegal narcotics trafficking, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

      37.  It was a part and an object of the conspiracy that JOSE HIDALGO, a/k/a "Jose Amaurys," a/k/a "Jose Rosario," a/k/a "Picho," JIMMY ORTIZ, PEDRO VENTURA, CRISTIAN D. GATON, HUMBERTO SANCHEZ, a/k/a "Chamo," LEOCADIO HIDALGO, a/k/a "Leo," GUILLERMO DELACRUZ, and QUILVIO SANTANA, a/k/a "Mayimbe," the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in financial transactions, to wit, the transfer of tens of thousands of dollars in cash, represented the proceeds of some form of unlawful activity, unlawfully, willfully, and knowingly would and did conduct such financial transactions, which in fact involved the proceeds of specified unlawful

activity, to wit, the proceeds of illegal narcotics trafficking, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### The Means And Methods Of The Conspiracy

38. Among the means and methods by which JOSE HIDALGO, a/k/a "Jose Amaurys," a/k/a "Jose Rosario," a/k/a "Picho," JIMMY ORTIZ, PEDRO VENTURA, CRISTIAN D. GATON, HUMBERTO SANCHEZ, a/k/a "Chamo," LEOCADIO HIDALGO, a/k/a "Leo," GUILLERMO DELACRUZ, and QUILVIO SANTANA, a/k/a "Mayimbe," the defendants, and others known and unknown, would and did carry out the conspiracy were the following:

a. From at least in or about 1987 up to and including the date of the filing of this Indictment, members and associates of the Hidalgo Organization received millions of dollars in narcotics proceeds as payment for narcotics supplied by the Hidalgo Organization. Members and associates of the Hidalgo Organization obtained the narcotics proceeds from many sources, including individuals who operated retail heroin and cocaine distribution spots to which the Hidalgo Organization supplied narcotics, as well as other narcotics traffickers who purchased wholesale quantities of heroin and cocaine from the Hidalgo

Organization. After receiving the narcotics proceeds, members and associates of the Hidalgo Organization took the proceeds to various stash locations, where they sorted the proceeds by denomination; counted the proceeds, at times by using money counting machines; and packaged the proceeds, often by wrapping the bills in bundles of $10,000 each. After sorting, counting, and packaging the narcotics proceeds, members and associates of the Hidalgo Organization stored the proceeds in various stash locations, including apartments, homes, and public storage facilities, pending instructions regarding delivery of the proceeds.

    b.    Members and associates of the Hidalgo Organization delivered the narcotics proceeds to individuals who acted as agents of, or intermediaries for, the narcotics traffickers from whom the Hidalgo Organization had originally purchased the narcotics on consignment. Members and associates of the Hidalgo Organization received instructions over the telephone from these agents and intermediaries regarding what quantity of narcotics proceeds to deliver, and when, where, and to whom to deliver the proceeds. After receiving the instructions, members and associates of the Hidalgo Organization took quantities of the narcotics proceeds, often up to several hundred thousand dollars at a time; placed the proceeds in large bags, suitcases, and duffel bags; and delivered the proceeds to pre-determined locations, such as businesses, homes, and public meeting places.

Upon delivering the narcotics proceeds to the designated locations, members and associates of the Hidalgo Organization handed the bags containing the proceeds to individuals whom they usually did not know, and who typically were identified by only a code name or number. The purpose of delivering the narcotics proceeds to these agents and intermediaries was ultimately to repay the narcotics traffickers from whom the Hidalgo Organization had purchased previous shipments of narcotics, and to enable the Hidalgo Organization to obtain future shipments of narcotics from the traffickers on consignment.

   c. Members and associates of the Hidalgo Organization maintained detailed ledgers in various stash locations regarding amounts of narcotics and narcotics proceeds that the Hidalgo Organization received and delivered. The ledgers typically recorded, among other things, the amounts of narcotics received by the Hidalgo Organization in given shipments; the amounts of narcotics distributed to the Hidalgo Organization's customers, usually other narcotics traffickers; the amounts of money owed by the customers to the Hidalgo Organization; the amounts of money received by the Hidalgo Organization from the customers in payment of those debts; and the amounts of narcotics proceeds delivered by the Hidalgo Organization, through agents and intermediaries, to the original owners of the narcotics, in repayment for receipt of the narcotics shipments.

38

Overt Acts

39.    In furtherance of said conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed by JOSE HIDALGO, a/k/a "Jose Amaurys," a/k/a "Jose Rosario," a/k/a "Picho," JIMMY ORTIZ, PEDRO VENTURA, CRISTIAN D. GATON, HUMBERTO SANCHEZ, a/k/a "Chamo," LEOCADIO HIDALGO, a/k/a "Leo," GUILLERMO DELACRUZ, and QUILVIO SANTANA, a/k/a "Mayimbe," the defendants, and others known and unknown, in the Southern District of New York and elsewhere:

a.    In or about early 1998, CC-1 removed over $1,000,000 in narcotics proceeds from a stash location operated by the Hidalgo Organization in the vicinity of 4077 Murdock Avenue, Bronx, New York, to prevent law enforcement agents from seizing the proceeds.

b.    In or about spring 1998, LEOCADIO HIDALGO counted and packaged narcotics proceeds in a stash location at 1024 East 241st Street, Bronx, New York.

c.    In or about spring 1998, PEDRO VENTURA counted and packaged narcotics proceeds in a stash location at 143 Bruce Avenue, Yonkers, New York.

d.    In or about April 1998, JOSE HIDALGO, HUMBERTO SANCHEZ, and other members and associates of the Hidalgo Organization possessed, among other things, approximately $1,240,000 in narcotics proceeds and a money-counting machine in a stash location at 143 Bruce Avenue, Yonkers, New York.

   e. In or about April 1998, JOSE HIDALGO,
HUMBERTO SANCHEZ, and other members and associates of the Hidalgo
Organization possessed, among other things, approximately
$250,000 in narcotics proceeds and narcotics ledgers in a stash
location at 4077 Murdock Avenue, Bronx, New York.

   f. On or about November 6, 2001, QUILVIO SANTANA
carried a bag containing narcotics proceeds out of the basement
of 552 West 171st Street, New York, New York, and drove with the
bag to JOSE HIDALGO's home, located in the vicinity of River
Road, Edgewater, New Jersey, where SANTANA parked his car in JOSE
HIDALGO's garage.

   g. On or about December 12, 2001, JOSE HIDALGO
and QUILVIO SANTANA drove from JOSE HIDALGO's home, located in
the vicinity of River Road, Edgewater, New Jersey, to a self-
storage facility in Edgewater, New Jersey, where JOSE HIDALGO and
SANTANA picked up three suitcases containing approximately
$1,100,000 in narcotics proceeds.

   h. On or about December 12, 2001, JOSE HIDALGO
and QUILVIO SANTANA also possessed, in addition to the narcotics
proceeds described above, approximately $330,000 in narcotics
proceeds in a self-storage facility in Edgewater, New Jersey, and

approximately $280,000 in narcotics proceeds in JOSE HIDALGO's

home, located in the vicinity of River Road, Edgewater, New

Jersey.

(Title 18, United States Code, Section 1956(h).)


_____
FOREPERSON

_____
JAMES B. COMEY
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JOSE HIDALGO,
  a/k/a "Jose Amaurys,"
  a/k/a "Jose Rosario,"
  a/k/a "Picho,"
JIMMY ORTIZ,
PEDRO VENTURA,
ROBERTO CRISTIAN URENA ALMONTE,
  a/k/a "Cristian Urena,"
  a/k/a "Villa Lona,"
CRISTIAN D. GATON,
RAFAEL FIGUEROA,
  a/k/a "Rafael Beato,"
  a/k/a "Liro,"
  a/k/a "Camaron,"
HUMBERTO SANCHEZ,
  a/k/a "Chamo,"
LEOCADIO HIDALGO,
  a/k/a "Leo,"
LEONARDO ROCQUE-SANTANA,
  a/k/a "Luis M. Mendoza,"
  a/k/a "Luis M. Santiago,"
  a/k/a "Kuki,"
GUILLERMO DELACRUZ,
QUILVIO SANTANA,
  a/k/a "Mayimbe,"
VICTOR DIAZ,
  a/k/a "White Horse,"
  a/k/a "Querube," and
JEFFREY BLAKE,
  a/k/a "Joseph,"
  a/k/a "Ariel,"

Defendants.

### INDICTMENT

S4 02 Cr. 401 (KMW)

18 U.S.C. §§ 924(c), 924(j), 1956(h),
1961, 1962(c), 1959(a)(1), and 2;
21 U.S.C. §§ 812, 841(a)(1),
841(b)(1)(A), and 846

JAMES B. COMEY
United States Attorney.

A TRUE BILL

_____
                    Foreperson.

42